Citation Nr: 1508817 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 04-00 544 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Los Angeles, California


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss disability.

2. Entitlement to service connection for a neck disability.

3. Entitlement to service connection for a headache disability.

4. Entitlement to service connection for a disability manifested by numbness of the fingers of both hands.


REPRESENTATION

Appellant represented by: Scott Davenport, Attorney


WITNESS AT HEARING ON APPEAL

Veteran
ATTORNEY FOR THE BOARD

T. Sherrard, Counsel


INTRODUCTION

The Veteran, who is the Appellant in this case, had active service from June 1968 to October 1969. 

This matter comes before the Board of Veterans' Appeals (BVA or Board) from a November 2002 rating decision by the above Department of Veterans Affairs (VA) Regional Office (RO).

This case has a lengthy procedural history that has been summarized in previous Board decisions. More recently, the Veteran provided testimony at a July 2013 Travel Board hearing before the undersigned Veterans Law Judge at the RO. A transcript of the hearing is associated with the claims folder.

Subsequently, in a November 2013 decision, the Board denied the claims for service connection for a neck disability, headache disability, and disability manifested by numbness of the fingers of both hands, and remanded the hearing loss claim for further development. 

The Veteran appealed the portion of the decision denying his service connection claims to the United States Court of Appeals for Veterans Claims (Court). In July 2014, the Court granted a Joint Motion for Remand (Joint Motion) that vacated the portion of the Board's November 2013 decision which denied service connection for a neck disability, headache disability, and disability manifested by numbness of the fingers of both hands, and remanded those claims for compliance with instructions provided in the Joint Motion.

In addition, the development requested by the Board with regard to the hearing loss claim having been completed, that claim is also appropriate for appellate review. 
FINDINGS OF FACT

1. The Veteran does not have a current bilateral hearing loss disability. 

2. The evidence is at least in relative equipoise as to whether the Veteran's neck disability, headaches, and disability manifested by numbness of the fingers in both hands are proximately due to a neck injury that occurred during active service. 


CONCLUSIONS OF LAW

1. The criteria for service connection for a bilateral hearing loss disability are not met. 38 U.S.C.A. §§ 101, 1101, 1110, 1112, 1113, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309, 3.385 (2014).

2. Resolving reasonable doubt in the Veteran's favor, the criteria for service connection for a neck disability are met. 38 U.S.C.A. §§ 101, 1101, 1110, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2014).

3. Resolving reasonable doubt in the Veteran's favor, the criteria for service connection for a headache disability are met. 38 U.S.C.A. §§ 101, 1101, 1110, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2014).

4. Resolving reasonable doubt in the Veteran's favor, the criteria for service connection for a disability manifested by numbness in the fingers of both hands are met. 38 U.S.C.A. §§ 101, 1101, 1110, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection Laws and Regulations

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). The United States Court of Appeals for Veterans Claims (Court) has held that "Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).

Where a veteran who served for ninety days or more during a period of war (or during peacetime service after December 31, 1946) develops certain chronic diseases, such as organic diseases of the nervous system (e.g., sensorineural hearing loss), to a degree of 10 percent or more within one year from separation from service, such diseases may be presumed to have been incurred in service even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. See 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2014).

In this case, as discussed below, the medical evidence of record does not demonstrate a current hearing loss disability, and, therefore, the provisions regarding presumptive service connection and continuity of symptomatology do not apply to this case. 

Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

Lay testimony is competent when it regards the readily observable features or symptoms of injury or illness and "may provide sufficient support for a claim of service connection." See Layno, 6 Vet. App. at 469; 38 C.F.R. § 3.159(a)(2). The Court has emphasized that when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. In such cases, the Board is within its province to weigh that testimony and to make a credibility determination as to whether that evidence supports a finding of service incurrence and continuity of symptomatology sufficient to establish service connection. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. Sept. 14, 2009). Lay statements may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). 

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of a veteran's claims file. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

A significant factor to be considered for any opinion is the accuracy of the factual predicate, regardless of whether the information supporting the opinion is obtained by review of medical records or lay reports of injury, symptoms and/or treatment. See Harris v. West, 203 F.3d 1347, 1350-51 (Fed. Cir. 2000) (examiner opinion based on accurate lay history deemed competent medical evidence in support of the claim); Kowalski v. Nicholson, 19 Vet. App. 171, 177 (2005) (holding that a medical opinion cannot be disregarded solely on the rationale that the medical opinion was based on history given by the veteran); Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that the Board may reject a medical opinion based on an inaccurate factual basis).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by a veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Service Connection for Bilateral Hearing Loss Disability

The Veteran contends that he has a current bilateral hearing loss disability that is related to acoustic trauma during active service. In light of his service in Vietnam and the circumstances of his service, acoustic trauma during active service is conceded. 

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater, or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, 4000 Hertz are 26 decibels or greater, or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. Also, the threshold for normal hearing is between 0 and 20 decibels, and higher threshold shows some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993).

After a review of all of the evidence of record, lay and medical, the Board finds that the weight of the evidence demonstrates that the Veteran's currently claimed bilateral hearing loss meets the definition of a hearing loss disability as required by 38 C.F.R. § 3.385, including during active service. 

An audiogram conducted at the time of enlistment in September 1967 demonstrated puretone thresholds of 15, 10, 10, and 5 decibels in the right ear and 20, 10, 10, and 5 decibels in the left ear at the test frequencies of 500, 1000, 2000, and 4000 Hz, respectively. Moreover, the Veteran did not voice any complaints of hearing loss, and hearing loss was not diagnosed at that examination. (Note: Prior to November 1, 1967, service department audiometric test results were reported in standards set forth by the American Standards Association (ASA). Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). In order to facilitate data comparison in this decision, for service department audiometric test results through October 31, 1967, the ASA standards have been converted to ISO-ANSI standards.)

At the November 1969 separation examination, an audiogram demonstrated puretone thresholds of 0, 0, 0, 5, and 5 decibels in the right ear and 0, 0, 0, 0, and 5 decibels in the left ear at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hz, respectively. The separation audiogram actually shows improvement in hearing ability as compared to the enlistment examination audiogram, providing probative evidence that a bilateral hearing loss disability was not present during active service. 

In sum, the Veteran's service treatment records are entirely negative for any complaints, reports, symptoms, findings, treatment, or diagnosis of hearing loss, and do not demonstrate hearing loss that meets the definition of a hearing loss disability as defined by VA regulations. See 38 C.F.R. § 3.385. 

The Board also finds that the weight of the evidence demonstrates that bilateral hearing loss did not manifest to a compensable degree within one year of service separation. The weight of the evidence demonstrates no hearing loss symptoms during the one year period after service, and no diagnosis or findings of hearing loss of any severity during the one year post-service presumptive period. See 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2014). 

Following separation from active service in 1970, in 1996, the Veteran was diagnosed with Eustachian tube dysfunction and complained of difficulty hearing as a result. However, it was noted that an audiogram was essentially within normal limits except for high frequency sensorineural hearing loss bilaterally in the 6000 to 8000 Hz range. Specifically, the audiogram conducted in March 1997 demonstrated puretone thresholds of 10, 10, 10, 0, and 5 decibels in the right ear and 5, 0, 5, 0, and 0 decibels in the left ear at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hz, respectively. 

The Veteran was afforded a VA audiological examination in March 2006. An audiogram demonstrated puretone thresholds of 10, 10, 5, 0, and 10 decibels in the right ear and 15, 10, 0, 5, and 0 decibels in the left ear at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hz, respectively. Speech recognition was 98 percent in both ears. Neither the puretone thresholds nor the speech recognition scores met the definition of a "hearing loss" disability under VA regulations. Moreover, the VA examiner noted that speech reception thresholds matched puretone averages, and that word recognition ability was excellent in both ears. 

The Veteran was afforded another VA audiological examination in January 2014. An audiogram demonstrated puretone thresholds of 25, 15, 15, 15, and 25 decibels in the right ear and 30, 15, 20, 20, and 25 decibels in the left ear at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hz, respectively. Speech recognition was 96 percent in both ears. Again, neither the puretone thresholds nor the speech recognition scores meet the definition of a "hearing loss" disability under VA regulations. 

In sum, there is no medical evidence of record that demonstrates a current hearing loss disability under VA regulations. 

Regarding the Veteran's statements that he has a hearing loss disability, the Board recognizes that lay witnesses may, in some circumstances, opine on questions of diagnosis and etiology. See Davidson, 581 F.3d at 1316 (Board's categorical statement that "a valid medical opinion" was required to establish nexus, and that a layperson was "not competent" to provide testimony as to nexus because she was a layperson, conflicts with Jandreau, 492 F.3d 1372). However, while the Veteran is competent to provide his lay description of hearing loss symptoms, he is not competent to determine whether his claimed bilateral hearing loss meets the definition of a hearing loss disability as defined by VA regulations. Such a finding can only be made via the appropriate audiological testing and requires specific medical knowledge and training. See Rucker, 10 Vet. App. at 74 (stating that a lay person is not competent to diagnose or make a competent nexus opinion about a disorder as complex as cancer). 

Without a showing of current hearing loss disability in accordance with the provisions of 38 C.F.R. § 3.385, service connection for bilateral hearing loss must be denied. "Congress specifically limits entitlement to service-connected disease or injury where such cases have resulted in a disability . . . in the absence of a proof of present disability there can be no claim." Brammer, 3 Vet. App. at 225. The Board recognizes that the Court has held that the presence of a chronic disability at any time during the claim process can justify a grant of service connection, even where the most recent diagnosis is negative. McClain v. Nicholson, 21 Vet. App. 319 (2007). However, where the overall record fails to support a current diagnosis of the claimed disability, as is the case here, that holding would not apply.

Because a current bilateral hearing loss disability has not been shown by competent evidence, the Board does not reach the additional question of the relationship of the claimed hearing loss to any loud noise exposure in service (although, as noted above, acoustic trauma during active service is conceded). While the Veteran may not have the level of hearing acuity he once had, he still has hearing in both ears within a range of normal to the point that it cannot be said he has bilateral "hearing loss" at this time. 

Moreover, while the Veteran was certainly exposed to extreme noise during his service, especially in light of his Vietnam service, based on the evidence of record, the weight of the competent evidence demonstrates no current hearing loss disability at this time. 

Therefore, the Board finds that a preponderance of the lay and medical evidence that is of record weighs against the claim for service connection for a bilateral hearing loss disability, and the claim must be denied. Because the preponderance of the evidence is against the bilateral hearing loss disability claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.

Service Connection for Neck Disability, Headaches, and Numbness of the Fingers

Next, the Veteran contends that he suffered a neck injury during active service, and that, in addition to neck pain, he has had continuous headaches since active service. He also contends that the numbness of the fingers in his hands is secondary to his neck injury. 

Specifically, he avers that, while on guard duty in 1968, a big explosion occurred approximately ten feet away from where he stood, and the blast threw him into a tree head first. He stated that he immediately felt his body ache, ears ringing, and had a severe headache. He also stated that he felt dizzy when he stood up, and noticed blood on his pants. He was taken to a hospital where treatment was focused on the shrapnel wound to his leg. He contends that he mentioned the headache to the medical staff, but was told that that was a natural symptom of a head injury that would go away with time. He states that he was unable to wear his helmet due to his headaches and neck pain for several months. 

The Board notes that service connection is in effect for scarring, residuals of shell fragment wound to the medial aspect of the left thigh with retained metallic fragment, resulting from the same injury the Veteran now states also caused his neck and headache disabilities, as well as the numbness in his fingers. 

The service treatment records document a shell fragment wound in the left knee in August 1968, but are negative for complaints, findings, or symptoms of a neck disability, headaches, or numbness of the fingers. 

Following separation from service, VA treatment records from March 2003 indicate complaints of intermittent numbness and tingling in both hands. The Veteran mentioned that he had sustained a head and neck injury due to an explosion that occurred while he was stationed in Vietnam during active service. Neurological examination was normal. The VA clinician assessed possible cervical radiculopathy, and an x-ray study of the cervical spine demonstrated severe degenerative changes at the C5-C6 level, mild degenerative changes at C4-C5 and C6-C7, and mild foramina narrowing at C5-C6 and C6-C7. 

The Veteran was afforded a VA examination in March 2006. The VA examiner assessed degenerative arthritis with moderately decreased range of motion of the cervical spine, mild radiculopathy of the upper extremities secondary to cervical spine pathology, and non-pathologic headaches also secondary to cervical spine dysfunction. With regard to whether the current cervical spine disability is related to active service, the VA examiner stated as follows:

In the absence of any documentation of cervical spine injury in the military we only have the testimony of the veteran who states that he sustained a neck injury in a concussion blast in 1968 in Vietnam. There is no evidence in the record to refute his statement but there is likewise no evidence in the record to support his statement. Given the fact that the veteran was apparently in a blast situation and sustained a shrapnel wound to the leg it is highly possible that he also in fact sustained a cervical spine injury as he states. In conclusion it is this examiner's opinion that I would have to engage in mere speculation to determine the precise cause of this level/degree of current cervical spine pathology.

As noted above, in November 2013, the Board denied service connection for the claimed neck disability, headaches, and numbness of the fingers based in large part on the March 2006 VA examiner's opinion. Specifically, the Board found that opinion to be the most probative and persuasive evidence in this case, noting that, essentially, the VA examiner concluded that there was no way to relate the current neck disability to military service in light of the negative service treatment records and large gap in time between service separation and the first treatment and/or diagnosis of the claimed disabilities. 

Subsequently, also as noted above, in July 2014, the Court granted a Joint Motion in which the parties concluded that the March 2006 VA examination and opinion is an inadequate basis upon which to deny service connection for the claimed disabilities as it is speculative. 

Since the Court's decision, the Veteran has submitted private treatment records from 2013 in which the treating physician states that the cervical spine/neck pathology are consistent with the claimed neck trauma during active service. 

The question before the Board is not one of medical nexus, as both the VA examiner and private physician seem to be in agreement that it is plausible that the claimed in-service neck injury could have caused the current cervical spine disability, headaches, and resulting radiculopathy manifested by numbness and tingling of the fingers. Rather, the question before the Board is whether the claimed in-service neck/head injury actually occurred. 

After reviewing the record again, the Board continues to observe and agrees with the 2006 VA examiner that there is no corroborating evidence of the claimed head or neck injury during active service. However, the Veteran has been consistent in recounting the mechanism of injury since inception of his claim in 2002, and there is nothing in the record that contradicts his statements regarding the claimed in-service injury. The Board has also considered 38 U.S.C.A. § 1154(a), which provides that due consideration shall be given to the places, types, and circumstances of a veteran's service as shown by such veteran's service record, the official history of each organization in which the veteran served, such veteran's medical records, and all pertinent medical and lay evidence. 

In light of these considerations, the Board finds that remanding this case for an additional medical nexus opinion would only serve to needlessly delay the case. Resolving all reasonable doubt in favor of the Veteran, the Board finds that the evidence is at least in relative equipoise as to whether the current neck disability, headaches, and numbness of the fingers are due to an injury in active service. Thus, service connection for the claimed neck disability, headaches disability, and disability manifested by numbness of the fingers is granted. 

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

With regard to the claimed neck disability, headache disability, and numbness of the fingers, given the full grant of benefits sought on appeal, no conceivable prejudice to the Veteran could result from this decision; therefore, no discussion of compliance with the VCAA is necessary with regard to those claims. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

With regard to the hearing loss claim, in a timely September 2002 letter, the RO provided notice to the Veteran regarding what information and evidence is needed to substantiate a claim for service connection, what information and evidence must be submitted by the Veteran, and what information or evidence VA will attempt to obtain. In addition, a March 2006 letter described how VA determines disability ratings and effective dates, and the case has been readjudicated multiple times since the Veteran received such notice, giving him ample opportunity to submit additional evidence. 

The Board is also satisfied VA has made reasonable efforts to obtain relevant records and evidence. Specifically, the information and evidence that has been associated with the claims file includes the Veteran's service treatment records, service personnel records, post-service VA and private treatment records, VA examination reports, and the Veteran's statements, including his testimony at the July 2013 Board hearing. 

The Court held in Bryant v. Shinseki, 23 Vet. App. 488 (2010), that 38 C.F.R. 3.103(c)(2) requires that the RO official or VLJ who conducts a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the July 2013 Board hearing, the undersigned Veterans Law Judge asked questions pertaining to the criteria necessary for establishing his claim, including regarding specific evidence that may help substantiate his claim. Moreover, neither the Veteran, nor his representative, has asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. As such, the Board finds that, consistent with Bryant, the Veterans Law Judge complied with the duties set forth in 38 C.F.R. 3.103(c)(2), and that any error in notice provided during the hearing constitutes harmless error.

VA examinations and opinions were obtained in March 2006 and January 2014 with regard to the question of whether the Veteran has a current hearing loss disability. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA examinations obtained in this case are adequate. The opinions as to the existence of a current hearing loss disability were predicated on a full reading of the private and VA medical records in the Veteran's claims file, as well as a complete audiological examination. The VA opinions considered all of the pertinent evidence of record, to include VA treatment records, comprehensive audiological examinations, and the statements of the Veteran, and provide complete rationale for the opinions stated, relying on and citing to the records reviewed. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the hearing loss claim has been met. 38 C.F.R. § 3.159(c)(4). The 2014 VA examination also substantially complies with the Board's November 2013 remand directives. 

Notably, the Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).


ORDER

Service connection for a bilateral hearing loss disability is denied. 

Service connection for a neck disability is granted.

Service connection for a headache disability is granted.

Service connection for a disability manifested by numbness of the fingers of both hands is granted.


____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs