# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-1284

Clarence W. Kowalski, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided    June 8, 2005   )

*Antonio E. Bendezu*, of Lincoln, Nebraska, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *David J. Lowenstein*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, KASOLD, and HAGEL, *Judges*.

GREENE, *Judge*:  Veteran Clarence W. Kowalski appeals, through counsel, a June 21, 2002, Board of Veterans' Appeals (Board) decision that denied his claims for VA service connection for bilateral hearing loss, cold-weather trauma, arteriosclerotic heart disease, and pulmonary disabilities. Record (R.) at 1-25.  On appeal, he raises arguments concerning only his hearing-loss claim, and he specifically withdraws his appeal of the Board decisions on his claims for cold-weather trauma, arteriosclerotic heart disease, and pulmonary disabilities. *See* Appellant's Brief (App. Br.) at 1.  Any issues surrounding those withdrawn claims are deemed abandoned. *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993).  Mr. Kowalski maintains that the Board erred by denying his hearing-loss claim on the basis that he had abandoned it by refusing to report for a VA medical examination and by also concluding that a private audiologist's opinion, which stated that his hearing loss "quite likely" began in service, had no probative weight because it was based solely on Mr. Kowalski's uncorroborated reports of incidents during his service.  App. Br. at 5-13.  He contends that the audiologist's opinion established service connection. *Id*.  He further asserts that because VA gave

him no compelling reason as to why another examination was necessary, he was not required to report for a scheduled VA medical examination. *Id.* The Secretary contends that, should the Court conclude that the Board erred by denying Mr. Kowalski's claim on the basis that he abandoned it by failing to report for a VA medical examination, that error is harmless because the Board adjudicated Mr. Kowalski's claim on the evidence of record and had a plausible basis for finding that the evidence did not support awarding him service connection. Secretary's Brief (Sec. Br.) at 6-15. The Court has jurisdiction under 38 U.S.C. §§ 7252(a) and 7266. For the reasons set forth below, the Board's decision will be vacated and the matter remanded.

## I. FACTS

Mr. Kowalski served honorably in the U.S. Army from April 1954 to February 1956, including service in Korea. R. at 28. His military records indicated that his service in Korea began on December 22, 1954, during the final month of the Korean Conflict period. *Id*; *see also* 38 C.F.R. § 3.2(e) (2004). In February 1999, he filed with a VA regional office (RO) a claim for VA service connection for, inter alia, hearing loss from his exposure to heavy-weapons fire while assigned as a light-truck driver in Korea. R. at 35-39. VA made several requests for Mr. Kowalski's service medical records from the National Personnel Record Center (NPRC) (R. at 44-46, 93), but those records were never found (*see* R. at 1-306). The records were apparently destroyed in a fire at the NPRC in St. Louis, Missouri in 1973. R. at 15. After he was given a VA respiratory system examination in December 1999 (R. at 99-101), the RO, in January 2000, denied Mr. Kowalski's claim for hearing loss after finding that it was not well grounded as there was no medical evidence that he had a current disability (R. at 104-08). In March 2000, Mr. Kowalski filed a Notice of Disagreement (NOD) with that RO decision. R. at 114. At that same time, he also applied for service connection for tinnitus and presented a copy of a letter written by Craig A. Foss, Master of Communication Disorders (M.C.D.) of the Hearing Clinic, Inc., Grand Island, Nebraska, who is referred to in the Board decision as a private audiologist. R. at 15, 18, 110-12. That letter included a copy of an audiogram administered to Mr. Kowalski in February 2000. *Id.* The letter, addressed to Mr. Kowalski, stated:

2

> [Mr. Kowalski has] a moderate bilateral high[-]frequency sensorineural hearing loss with good discrimination ability.
>
> From [Mr. Kowalski's] history of being exposed to the noise of small arms and tanks while in the military, during the mid 1950[s], it is quite likely that this was the beginning of [his] hearing loss. The type and degree of [his] hearing level on [his] audiogram is consistent with noise[-]induced hearing loss.

R. at 110-12. In April 2000, Mr. Kowalski appealed to the Board and requested a "thorough and contemporaneous [medical] examination." R. at 121-22. In May 2000, however, Mr. Kowalski requested that VA expunge from the record his December 1999 VA medical examination report; he asserted that the examination was inadequate for rating purposes. R. at 128-30. Mr. Kowalski also maintained that he would not undergo another VA medical examination. *Id*. He stated, through counsel:

> Should the [RO] submit to Mr. Kowalski compelling reasons, as required by [VA Adjudication Procedure Manual M21-1 (M21-1)], for the scheduled compensation examination . . . he would willingly comply with the [RO's] request for [an] examination.

R. at 130.

In July 2000, the RO issued a Statement of the Case (SOC) stating, inter alia, that Mr. Kowalski had not presented evidence of a hearing loss or evidence of a likely connection of any hearing loss to military service. R. at 138-44. The SOC noted that "the veteran submitted evidence regarding his hearing loss" but that a VA examination was being scheduled to evaluate that condition. R. at 143. In August 2000, Mr. Kowalski's counsel advised the RO that Mr. Kowalski would not attend any scheduled VA examination and reiterated that unless Mr. Kowalski was given compelling reasons for doing so, he would not attend any VA medical examinations. R. at 152-53. Mr. Kowalski's counsel also filed a Substantive Appeal and stated:

> [Mr. Kowalski] has submitted medical evidence sufficient for [VA] to rate from.
>
> . . . .
>
> The [December 1999] VA compensation examination is arbitrary, capricious, and, therefore, clearly and unmistakably erroneous.

. . . .

> The [RO] has denied benefits by scheduling an improper VA compensation examination. Denial was further confirmed by the notification that the adjudication of his claim was solely dependent upon the outcome of a VA compensation examination.
>
> Due to the clearly adversarial position demonstrated by the [RO], Mr. Kowalski moves the [Board] *to accept jurisdiction of his case and to make a final decision based upon the evidence currently of record*.

R. at 164-65 (emphasis added). Based on this statement, VA cancelled Mr. Kowalski's scheduled audiological examination. R. at 176.

In a March 2001 letter to the RO, Mr. Kowalski's counsel asserted:

> Mr. Kowalski [has] submitted a proper and timely appeal and [NOD]. Your blatant refusal to timely promulgate Mr. Kowalski['s] appeal is an abuse of his rights to a timely appeal. It is without legal merit and entirely inappropriate that Mr. Kowalski['s] appeal has not been promulgated.
>
> Mr. Kowalski has been advised to take this matter to the [VA] Office of Inspector General.

R. at 250. In April 2001, VA provided to Mr. Kowalski a letter notifying him of the information and evidence necessary to substantiate his claim and indicating which portion of any such information or evidence he needed to provide and what VA would provide. R. at 252-56. In response, Mr. Kowalski's counsel asserted:

> It has been approximately 20 months since Mr. Kowalski filed his original claim for benefits. It has been [15] months since he was first denied these benefits. It has been [12] months since he submitted his . . . VA [S]ubstantive [A]ppeal. The [RO] has repeatedly refused to provide deference to submitted private evidence, instead choosing to schedule Mr. Kowalski for an inappropriate VA compensation examination. This [is] in direct contradiction to statute, regulation[,] and [the VA] adjudication manual.
>
> . . . .
>
> Mr. Kowalski moves that his appeal be immediately promulgated to the [Board] for timely adjudication. Any further

4

delay can only be construed as a willful and wanton disregard of Mr. Kowalski's right to a timely appeal.

R. at 259-60. In August 2001, after Mr. Kowalski refused to report for a VA examination and did not submit any additional evidence following the April 2001 notification letter, the RO denied his claim. The RO found that the evidence did not show that his hearing-loss condition was related to his military service. R. at 270. Mr. Kowalski appealed to the Board, and on June 21, 2002, the Board found that Mr. Kowalski, without good cause or adequate reason, had refused to report for his scheduled VA examination, and thus, under 38 C.F.R. § 3.158 (2001), had abandoned his hearing-loss claim. R. at 2. Alternatively, the Board determined that the preponderance of the evidence of record was against awarding Mr. Kowalski service connection after finding that the private audiologist's opinion was based solely on Mr. Kowalski's own unsubstantiated reports of noise exposure during his service. R. at 18. Relying on *Reonal v. Brown*, 5 Vet.App. 458 (1993), and *Swann v. Brown*, 5 Vet.App. 229 (1993), the Board found:

> [The] preponderance of evidence is against the veteran's claim. The evidence in essence consists of the nexus opinion of an audiologist based on the veteran's own reports of noise exposure during service. The Court has held on a number of occasions that a medical opinion premised upon an unsubstantiated account of a claimant is of no probative value.
>
> Although the statement from the veteran's audiologist is the only medical evidence of record pertinent to the question of whether the veteran's currently-shown hearing loss had its inception during his period of service, the Board declines to give it probative weight. The statement was based entirely upon the veteran's own reported history of having been exposed to noise during service in Korea.

R. at 17-18. Mr. Kowalski appealed to the Court.

On appeal, Mr. Kowalski maintains that VA scheduled a medical examination solely for the purpose of rebutting his private audiologist's opinion and that VA did not explain what probative evidence would be gathered from a VA examination. App. Br. at 10. He argues that his audiologist's examination and opinion complied with the rating requirements in 38 C.F.R. § 4.85 (2001) for hearing loss, and that, under 38 U.S.C. § 5125, a VA examination was not required to confirm the findings of his private medical opinion. *Id.* at 8-9. Thus, he contends, under 38 C.F.R. § 3.326(b)

and (c) (2004), M21-1, part VI, chapter 1, paragraph 1.07(b)(6) (Insufficient Reports) (2004), and M21-1, part VI, chapter 1, paragraph 1.13(a) (Canceling Unnecessary Review Examinations) (2004), he was not required to report for the scheduled VA examination. *Id.* at 5-13. (Throughout the appellant's principal and reply briefs he has referred to "M21-1, [p]art VI, [c]hapter 1, [p]aragraph 1.07(a)(6)"; a review of M21-1 reveals that the relevant section is paragraph 1.07(b)(6)). He asserts that, if there was a medical contradiction concerning his hearing loss, the Board could have requested an independent medical opinion, which it did not. *Id.* at 10-11.

In response, the Secretary contends that the Board correctly concluded that Mr. Kowalski's refusal to be examined by VA was without adequate reason or good cause and that his refusal constituted an abandonment of his claim under 38 C.F.R. § 3.158. Sec. Br. at 8-11. Alternatively, the Secretary argues that any error made by the Board in concluding that Mr. Kowalski had abandoned his claim was harmless because the Board fully adjudicated the claim on the merits and had a plausible basis for denying the claim. *Id.* at 6-15.

## II. ANALYSIS

### A. Abandonment of Claim

The Board found that Mr. Kowalski, without good cause or adequate reason, had refused to report for his scheduled VA audiological examination, and thus, under 38 C.F.R. § 3.158, that he had abandoned his claim. R. at 17. Under 38 C.F.R. § 3.158(a), "where evidence requested in connection with an original claim . . . is not furnished within 1 year after the date of request, the claim will be considered abandoned." Further, § 3.158(b) provides that if a veteran "fails without adequate reason to respond to an order to report for [VA] examination within 1 year from the date of request and payments have been discontinued, the claim for such benefits will be considered abandoned." 38 C.F.R. § 3.158(b). Mr. Kowalski, through counsel, refused to appear for a VA medical examination and instead requested an adjudication of the claim based on the evidence then of record.

First, § 3.158(b) does not apply in this case because it applies to circumstances where a veteran refuses to report for a VA examination after VA has discontinued the veteran's payments. 38 C.F.R. § 3.158(b). Second, although the refusal to report for a VA examination scheduled in

connection with an original claim could be construed, under § 3.158(a), as a failure to furnish evidence requested in connection with an original claim, *see Jones v. West*, 12 Vet.App. 98, 103 (1998) (suggesting that 38 C.F.R. § 3.158(a) might refer to both documentary evidence and VA medical examinations), we conclude that such a refusal is addressed more specifically by 38 C.F.R. § 3.655(b) (2001). That regulation specifically provides that "[w]hen a claimant fails[, without good cause,] to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record." *See* 38 C.F.R. § 3.655(a) and (b) (the Court notes that, although § 3.655 is included in title 38, Code of Federal Regulations, under the heading "Adjustments and Resumptions," the language of § 3.655 makes clear that that regulation applies in situations involving original claims). Accordingly, under the canon of interpretation that the more specific trumps the general, we hold that § 3.655(b) controls when, as here, a claimant refuses to report for a VA examination scheduled in connection with an original claim. *See Zimick v. West*, 11 Vet.App. 45, 51 (1998) ("'a more specific statute will be given precedence over a more general one . . . .'" (quoting *Busic v. United States*, 446 U.S. 398, 406 (1980))). Although the Board erred by concluding that under § 3.158 Mr. Kowalski had abandoned his claim, this error is not prejudicial because the Board nevertheless addressed the merits of Mr. Kowalski's claim, and thus, it effectively applied § 3.655(b). *See* 38 U.S.C. § 7261(b)(2) (providing that the Court shall take due account of the rule of prejudicial error).

With § 3.655(b) as the controlling regulation in this case, the next question is whether Mr. Kowalski has demonstrated that his failure to report for a VA examination was based on good cause. "Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant, [and] death of an immediate family member, etc." 38 C.F.R. § 3.655(a). Mr. Kowalski argues that he refused to report for the examination because (1) under 38 U.S.C. § 5125, a VA examination was not required to confirm the findings of his private audiologist report and (2) the RO had failed to give him, as he contends is required by certain M21-1 provisions, "compelling reasons" to report for an examination. For the following reasons, we reject Mr. Kowalski's arguments and conclude that his refusal to report for a VA examination was not based on good cause.

Concerning Mr. Kowalski's argument that a VA examination was not necessary because, under 38 U.S.C. § 5125, the letter from his private audiologist should be sufficient for the purposes

of establishing service connection for his hearing-loss condition, 38 U.S.C. § 5103A provides that "[t]he Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary." The assistance to be provided includes conducting a medical examination or providing a medical opinion if necessary. *See* 38 U.S.C. § 5103A(d)(2). Section 5125 provides:

> For purposes of establishing any claim for benefits . . . a report of a medical examination administered by a *private physician* that is provided by a claimant in support of a claim for benefits under that chapter *may be accepted without a requirement for confirmation by an examination* by a physician employed by the Veterans Health Administration if the report is sufficiently complete to be adequate for the purpose of adjudicating such claim.

38 U.S.C. § 5125 (emphasis added). There is no indication in the record, nor has Mr. Kowalski argued, that his audiologist is a physician for the purposes of applying section 5125. Even assuming that his audiologist is a physician, however, the Court holds that, under the circumstances of this case, VA had the authority to schedule Mr. Kowalski for a VA hearing examination. In *Struck v. Brown*, the Court held that section 5125 is not mandatory but, rather, permissive in nature, but that it would not permit the Board to act in an arbitrary and capricious manner in not crediting a claimant's evidence. *Struck*, 9 Vet.App. 145, 155 (1996). Thus, even if the audiologist's letter was adequate to support the adjudication of Mr. Kowalski's claim, reliance on such report alone is not required by VA unless failure to do so would be arbitrary and capricious. *Id*. Here, the decision to schedule Mr. Kowalski for a VA examination was a permissible attempt to obtain additional evidence necessary to decide his claim. *See Shoffner v. Principi*, 16 Vet.App. 208, 213 (2002) (holding that VA has discretion to decide when additional development is necessary); 38 C.F.R. 3.304(c) (2001); *see also Mariano v. Principi*, 17 Vet.App. 305, 312 (2003) (holding that VA may not order additional development for purpose of obtaining evidence against appellant). The Secretary's duty to assist under the facts of this case was particularly great in light of the unavailability of Mr. Kowalski's service medical records. *See Cuevas v. Principi*, 3 Vet.App. 542 (1992) (stating that when service medical records are presumed destroyed the VA's duty to assist is heightened); *Moore v. Derwinski*, 1 Vet.App. 401, 406 (1991) (stating that VA's duty to assist is particularly great when medical records are unavailable). Indeed, under these circumstances, any

8

failure by VA to schedule for him an examination before rejecting his claim could have violated VA's duty to assist him. 38 U.S.C. § 5103A(d); *Moore*, *supra*.

Regarding Mr. Kowalski's reliance upon the M21-1 provisions as a basis to require the RO to give him compelling reasons to report for an examination, we recognize that, under M21-1, part IV, chapter 1, paragraph 1.07(b)(6), "the rating activity may request that the claimant be reexamined by another medical examiner if compelling reasons exist." However, that section applies only to the sufficiency of a previous VA examination. *See generally* M21-1, pt. IV, ch. 1, para. 1.07 ("Sufficiency of VA Examination"). Mr. Kowalski cites only to M21-1, part VI, chapter 1, paragraph 1.13(a), concerning the scheduling of VA examinations subsequent to a private examination, which admonishes the RO "not [to] request an examination solely to confirm evidence listed in 38 C.F.R. 3.326(c) that is otherwise adequate for rating." Thus, there is no basis for Mr. Kowalski's argument that there must be "compelling reasons" given by VA before an initial hearing examination can be scheduled on his behalf. Therefore, the Court holds that the Secretary has the authority to schedule a veteran for an examination for confirmation purposes without explicitly advising the veteran of "compelling reasons" for the necessity of the examination.

The Court's caselaw on a claimant's cooperation in the adjudication process is clear: "'If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence.'" *Dusek v. Derwinski*, 2 Vet.App. 519, 522 (1992) (quoting *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991)). We also recognize that a veteran is free to refuse to report for a scheduled VA examination. However, the consequences of that refusal may result in the adjudication of the matter based on the evidence of record under § 3.655. Here, Mr. Kowalski refused to appear for his two scheduled VA examinations on his belief that VA already had sufficient evidence. R. at 130, 152-53, 164-65, 259-60. The Board implicitly invoked § 3.655(a) and correctly found that Mr. Kowalski's refusal was a voluntary election on his part and that of his counsel and that his failure to appear was not based on good cause under that regulation. *Compare Holland ( Lee) v. Brown*, 6 Vet.App. 443, 445, 448-49 (1994) (refusal to submit to VA examination because of televised reports regarding care at VA Medical Centers not considered good cause); *Olson v. Principi*, 3 Vet.App. 480, 482-83 (1992) (financial hardship associated with traveling to VA examination site not considered good cause for failure to

9

appear); *Dusek*, 2 Vet.App. at 521-22 (veteran's allegation of medical malpractice and racial discrimination not considered good cause for failure to appear for VA examination).

## B. Claim on the Merits

Having resolved that any error by the Board in finding that, under § 3.158, Mr. Kowalski abandoned his claim was non-prejudicial, we now look to the Board's determination on the merits of the claim. The Board's determination of service connection is reviewed by the Court under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Rose v. West*, 11 Vet.App. 169, 171 (1998). "'A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Service connection is awarded to a claimant where there is (1) medical evidence of a current disability; (2) medical evidence or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. *See Hickson v. West*, 12 Vet.App. 247, 253 (1999); 38 C.F.R. § 3.303(a) (2003).

When rendering its decision, the Board must consider all relevant evidence of record and address in its decision all potentially applicable provisions of law and regulation. *See Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a)(d)(1). The Board also is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the decision, as well as to facilitate review in the Court. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57. This is especially true in a case such as this where a veteran's records are lost and the Board has a heightened duty to provide a full explanation of the reasons or bases for it findings. *See Moore, supra*; *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991).

In its adjudication of this matter, the Board, relying upon *Reonal* and *Swann*, both *supra*, determined that it would not give probative value to the private audiologist's letter. That letter, dated almost 46 years after Mr. Kowalski's separation from service, provided an opinion based on service

history related by Mr. Kowalski. Indeed, there was very little detail in that letter, and the Board had a basis for attributing less probative value to the letter. *Cf. Reonal* and *Swann*, both *supra*. The Court is not satisfied, however, that the Board accomplished all that it was required to do in this matter. First, although the Board may reject a medical opinion that is based on facts provided by the veteran that have previously been found to be inaccurate (*Reonal*) and may reject such a medical opinion because other facts present in the record contradict the facts provided by the veteran that formed the basis for the opinion (*Swann*), the Board may not disregard a medical opinion *solely* on the rationale that the medical opinion was based on a history given by the veteran. *See Wilson v. Derwinski*, 2 Vet.App. 614, 618 (1992) (stating Board must evaluate the credibility and weight of the history upon which medical opinion is predicated). Further, because Mr. Kowalski's records were lost, the Board had a heightened duty to provide a full explanation of the reasons or bases for its findings. *See Moore* and *O'Hare,* both *supra*. This duty recognizes the Board's further obligation to consider "all reasonably raised matters regarding the issue on appeal." *Urban v. Principi*, 18 Vet.App. 143, 145 (2004). One matter reasonably raised falls under section 1154(b), which provides:

> In the case of any veteran who engaged in combat with the enemy in active service, . . . the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran.

38 U.S.C. § 1154(b).

Mr. Kowalski's report of separation indicated that his service in Korea began on December 22, 1954. *See* R. at 28. VA regulations state that the Korean Conflict period extended from June 27, 1950, through January 31, 1955, inclusive. 38 C.F.R. § 3.2(e). Although the Korean War Armistice was signed on July 27, 1953, to "insure a complete cessation of hostilities and of all acts of armed force in Korea until a final peaceful settlement is achieved," Military Armistice In Korea and Temporary Supplementary Agreement, July 27, 1953, U.N.-N. Korea, 4 U.S.T. 234, Mr. Kowalski did serve in Korea during a defined period of war under 38 C.F.R. § 3.2(e). Therefore, it

is possible that his lay statement concerning his exposure to heavy-weapons fire that he maintains resulted in his hearing loss (R. at 35-39) could support service connection under 38 U.S.C. § 1154(b). *See Sizemore v. Principi*, 18 Vet.App. 264, 272 (2004) (a determination whether a veteran was in combat must be made on a case-by-case basis, and the definition of "engaged in combat with the enemy," as used in 38 U.S.C. § 1154(b), requires that the veteran has "personally participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality"). The Board did not address this reasonably raised possibility. Accordingly, until that matter is discussed adequately, the Court cannot conduct an effective review. *See Allday*, *Moore, O'Hare,* and *Gilbert*, all *supra*. Therefore, the matter will be remanded for the Board to conduct a review of the evidence of record and consider all applicable law and regulations. The Board should specifically address whether any of Mr. Kowalski's service in Korea falls under the definition of "engaged in combat with the enemy," which would make him eligible for consideration under 38 U.S.C. § 1154(b). *See Sizemore*, *supra*. Furthermore, the Board must take appropriate actions consistent with its heightened obligations (i.e. to assist, to provide reasons or bases, and to consider the rule of benefit of the doubt) that are placed on VA as a result of the loss of military records, which are critical to the adjudication of Mr. Kowalski's claim, while those records were in the custody of the government. *See Cuevas*, *Moore*, *O'Hare* all *supra.*

On remand, the parties are reminded that "[t]he duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." *Wood*, 1 Vet.App. at 193. As we hold above, VA has not only the discretion, but in this case, the duty under 38 U.S.C. § 5103A(d) and *Moore*, *supra*, to schedule an examination for Mr. Kowalski in order to determine service connection and a potential rating for any service-connected condition. Mr. Kowalski and his counsel are expected to cooperate in the efforts to adjudicate his claim for service connection. Their failure to do so would subject them to the risk of an adverse adjudication based on an incomplete and underdeveloped record.

### III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the Board has committed prejudicial error that warrants remand. Therefore, the June 21, 2002, decision of the Board is VACATED and the matter is REMANDED to the Board for further adjudication in accordance with this opinion. On remand, Mr. Kowalski is free to raise additional arguments to the Board and the Board must address them. *See Kay v. Principi*, 16 Vet.App. 529 (2002); *Kutscherousky v. West*, 12 Vet.App. 369 (1999) (per curiam order).