Citation Nr: 1536778 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 11-00 105 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to service connection for bilateral fallen arches.

2. Entitlement to service connection for gastroesophageal reflux disease (GERD), to include as secondary to service-connected asthma.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

Veteran and D.R.N.




ATTORNEY FOR THE BOARD

Devon Rembert-Carroll, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1981 to August 1991. 

This appeal comes before the Board of Veterans' Appeals (Board) on appeal from April 2009 and December 2009 rating decisions issued by the Regional Offices in Baltimore, Maryland, and Winston-Salem, North Carolina, respectively. 

The Veteran testified before the undersigned Veterans Law Judge at a Board videoconference hearing in January 2013. A transcript of that proceeding has been associated with the claims file. 

In March 2013 and July 2014 decisions, the Board remanded the claims of entitlement to service connection for fallen arches, GERD and sleep apnea for further development.

A November 2011 rating decision granted entitlement to service connection for sleep apnea. As such, the issue is no longer before the Board. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

As part of the July 2014 Board remand, the Veteran was afforded new VA examinations in August 2014 to determine the nature and etiology of his fallen arches and GERD. 
In regards to the Veteran's fallen arches, the examiner concluded that the Veteran's pes planus was most likely acquired and secondary to excessive weight (currently 72 inches at 270 pounds). The examiner noted that there was no mention of flat feet in the service treatment records. In response to whether the Veteran's pes planus clearly and unmistakably preexisted service the examiner responded: "There is no evidence of flat feet recorded in the service treatment records. Veteran states he 'Has always been that way'".

In response to whether the Veteran's bilateral pes planus clearly and unmistakably pre-existed service and whether the Veteran's bilateral pes planus clearly and unmistakably did not undergo an increase in severity in service beyond its natural progression, the examiner responded: "This is unknown and cannot be known by anyone, specialist or otherwise. However, his foot pain is not from flat feet - it is from degenerative joint disease (DJD) of the 1st MTP joints in both feet. However, it was likely made worse by the bunionectomy on the right in 1987 during military service but not caused by the bunionectomy".

In response to whether pes planus was proximately due to, or the result of service-connected degenerative arthritis of both great toes, status post hallux, limitus (right foot) the examiner responded: "No, the pes planus or flat feet is not the reason for the arthritis in either foot". In response to whether it was at least as likely as not (50 percent or greater possibility) that pes planus is permanently worsened in severity (aggravated) by service-connected degenerative arthritis of both great toes, status post hallux, limitus (right foot) the examiner responded; "Yes, the right bunionectomy in 1987 likely made the current right toe pain worse - and it is worse in the right. Still has some pain in the left big toe but did not have surgery on the left".

The Board finds that the August 2014 VA examination is inadequate. First, the Board finds that the examiner's conclusions are based, at least in part, on an inaccurate factual premise. See Kowalski v. Nicholson, 19 Vet. App. 171, 179 (2005) (citing Reonal v. Brown, 5 Vet. App. 458, 461 (1993) and Swann v. Brown, 5 Vet. App. 229 (1993) (stating that the Board is not bound to accept medical opinions that are based upon an inaccurate factual background). Specifically, a November 1982 service treatment record confirmed a diagnosis of moderate pes planus. Additionally, an April 1983 service treatment record again confirmed a diagnosis of pes planus. Furthermore, the August 2014 VA examiner failed to address the actual questions posed in the July 2014 Board remand directives. See Stegall v. West, 11 Vet. App. 268 (1998). Therefore, a remand is necessary to afford the Veteran a new VA examination to determine the nature and etiology of his pes planus. 

In regards to the Veteran's GERD the examiner concluded that the condition claimed was less likely than not (less than 50% probability) incurred in or caused by the claimed in-service injury, event or illness. The examiner stated that there was "no evidence of GERD or GERD like symptoms in the service treatment records. No evidence of asthma found in service treatment records". The Board again finds the August 2014 VA examination to be inadequate as it failed to address the actual questions posed in the July 2014 remand directives, notably, whether the Veteran's GERD was secondary to his service-connected asthma. Therefore, on remand the Veteran should also be provided with a new VA examination in regards to his claimed GERD. 

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a new VA examination, with a different VA examiner, to determine the current nature and likely etiology of his fallen arches/pes planus. The claims folder, including a copy of this remand, must be made available to and reviewed by the examiner in conjunction with the requested study. 

The examiner must address the following:

a. Is the Veteran's bilateral pes planus congenital/developmental, or is it acquired? 

b. If it is considered to be congenital/developmental, is it a disease or defect? 

If it is a defect, did the Veteran have superimposed pathology during active duty? 

[Note: a disease generally refers to a condition that is considered capable of improving or deteriorating while a defect is generally not considered capable of improving or deteriorating. VAOPGCPREC 82-90 (1990) (citing Durham v. United States, 214 F.2d 862, 875 (D.C. Circuit 1954)].

c. If the pes planus is considered to have been acquired (as defined above), and not congenital or developmental, did it clearly and unmistakably pre-exist service?

d. If it clearly and unmistakably pre-existed service did bilateral pes planus clearly and unmistakably not undergo an increase in severity in service beyond its natural progression?

e. Alternatively, is it as least as likely as not that (50 percent or greater possibility) pes planus is proximately due to, or the result of service-connected degenerative arthritis of both great toes, status post hallux, limitus (right foot)? 

f. Is it as least as likely as not (50 percent or greater possibility) that pes planus is permanently worsened in severity (aggravated) by service-connected degenerative arthritis of both great toes, status post hallux, limitus (right foot)?
If the opinion is that there is aggravation, to the extent that is possible, the examiner is requested to provide an opinion as to approximate baseline level of severity of the nonservice-connected condition before the onset of aggravation. 

The examiner should note that "aggravation" is defined for legal purposes as a worsening of the underlying condition versus a temporary flare-up of symptoms. The examiner should provide a rationale for his or her opinion with reference to the evidence of record. Citation to medical authority/treatise would be helpful.

In answering the above questions, the examiner should consider the absence of foot problems/pes planus at the time of entry to service; the subsequent in-service diagnosis of pes planus; and the Veteran's statements that he had no foot problems prior to entering service. 

If the examiner feels that the requested opinions cannot be rendered without resorting to speculation, the examiner should state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e., no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e., additional facts are required, or the examiner does not have the needed knowledge or training).

2. Schedule the Veteran for new VA examination, with a different VA examiner, to determine the current nature and likely etiology of GERD. The claims folder, including a copy of this remand, must be made available to and reviewed by the examiner in conjunction with the requested study. 

The examiner must address the following:

Is it as least as likely as not that (50 percent or greater possibility) GERD had its clinical onset during service or is related to any in-service event or disease?

Is it as least as likely as not that (50 percent or greater possibility) GERD is proximately due to, or the result of service-connected asthma? 

Is it as least as likely as not (50 percent or greater possibility) that GERD is permanently worsened in severity (aggravated) by service-connected asthma?

If the opinion is that there is aggravation, to the extent that is possible, the examiner is requested to provide an opinion as to approximate baseline level of severity of the nonservice-connected condition before the onset of aggravation. 

The examiner should note that "aggravation" is defined for legal purposes as a worsening of the underlying condition versus a temporary flare-up of symptoms. The examiner should provide a rationale for his or her opinion with reference to the evidence of record. Citation to medical authority/treatise would be helpful.

In answering the above questions, the examiner should consider the Veteran's lay statements and internet articles submitted by the Veteran. 
If the examiner feels that the requested opinions cannot be rendered without resorting to speculation, the examiner should state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e., no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e., additional facts are required, or the examiner does not have the needed knowledge or training).

3. After all development has been completed, re-adjudicate the claims for service connection. If the benefits sought remain denied, the Veteran and his representative should be furnished a supplemental statement of the case, and be given an opportunity to submit written or other argument in response before the claims file is returned to the Board for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).







This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 
(West 2014).



_________________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).