Citation Nr: 1719236 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 09-48 267 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUE

Entitlement to a rating in excess of 10 percent for atypical Coat's disease of the right eye.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

E. Ko, Associate Counsel



INTRODUCTION

The Veteran served on active duty from September 1986 to December 2007. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina. The Board remanded the case in March 2016 for further development.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

Although the Board sincerely regrets the further delay, another remand is required in this appeal to pursue additional development to ensure that there is a complete record upon which to decide the Veteran's claims so that he is afforded every possible consideration. 

The Board finds that an additional examination is warranted for the Veteran's claim as the April 2016 VA examination is insufficient to decide the claim. The Board notes that VA's schedule for rating eye disabilities were revised effective December 10, 2008, but that these amended criteria govern cases only when the claim is filed on or after that date, unless the Veteran asks that his claim be adjudicated under the new criteria. See 73 Fed. Reg. 66,543 (November 10, 2008). Here, the Veteran's initial claim for service connection was received in October 2007 and granted effective January 1, 2008, the date following discharge from service. Although the Veteran did not explicitly request review under the revised criteria, the RO applied part of the new (post-2008) criteria in the April 2016 supplemental statement of the case. Accordingly, the old (pre-2008) criteria govern the claim for the period from January 1, 2008 to April 14, 2016, and, for the period from April 15, 2016 forward, the Veteran's right eye condition must be considered under both the old (pre-2008) criteria and the new (post-2008) criteria, and the rating assigned must be based on whichever evaluation is more favorable to the Veteran. See Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003).

The old (pre-2008) criteria require that ratings for contraction of visual field in each eye are determined by computing an average concentric contraction using test results from a Goldmann perimeter chart. See 38 C.F.R. §§ 4.76, 4.76a, 4.84a (2007). Furthermore, the schedule requires that "[n]ot less than 2 recordings, and when possible, 3 will be made." See 38 C.F.R. § 4.76 (2007). Additionally, "[t]he charts will be made a part of the report of examination." See id. Similarly, the revised (post-2008) criteria require that "[i]n all cases, the results [of the visual field testing] must be recorded on a standard Goldmann chart..., and the chart must be included with the examination report." See 38 C.F.R. § 4.77 (2016). Further, the revised (post-2008) criteria require where near corrected vision is at least two scheduled steps worse than distance corrected vision, "the examination report must include at least two recordings of near and distance corrected vision and an explanation of the reason for the difference." 38 C.F.R. § 4.76 (2016). 

Here, the April 2016 VA examiner did not use the Goldmann Visual Field test to evaluate the Veteran's visual field contraction. Additionally, it appears that only one visual field test was conducted, rather than the two or three recordings required under the old (pre-2008) criteria, which, as discussed, govern at least the initial appellate period and potentially the entire period on appeal. Further, although the April 2016 VA examination reveals that the near corrected vision is at least two scheduled steps worse than the distance corrected vision, two visual acuity tests was were not conducted and explanation of the reason for the difference was not provided, as required under the revised (post-2008) criteria, which may govern the appellate period from April 15, 2016 onward. 

Accordingly, the Board finds that the record, as it stands, is insufficient to allow the Board to make a decision on this claim. Accordingly, re-examination is warranted. See Kowalski v. Nicholson, 19 Vet. App. 171 (2005) (stating that VA has discretion to schedule a Veteran for a medical examination where it deems an examination necessary to make a determination on the Veteran's claim).

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for an appropriate VA examination with a licensed optometrist or ophthalmologist to assess the current level of severity of his service-connected atypical Coat's disease of the right eye. The Veteran's claims file and a copy of this remand must be made available to, and reviewed by, the examiner in conjunction with the examination. Any medically indicated special tests should be accomplished, to include visual field testing. 

When examining visual acuity, the examiner should conduct at least two visual acuity tests and provide an explanation for this difference if he or she finds that the near corrected vision is at least two scheduled steps worse than the distance corrected vision.

When examining visual fields, the examiner must use either Goldmann kinetic perimeter or automated perimetry using Humphrey Model 750, Octopus Model 101, or later versions of these perimetric devises with simulated kinetic Goldmann testing capability. The examiner must chart at least 16 meridians 22 1/2 degrees apart for each eye and indicate the Goldmann equivalent used. If additional testing is necessary to evaluate visual fields, the additional testing must be conducted using either a tangent screen or a 30-degree threshold visual field with the Goldmann III stimulus size and the examination report must then include tracing of either the tangent screen or of the 30-degree threshold visual field with the Goldmann III stimulus size. 

2. After the requested development has been completed, the RO should review the examination report to ensure that it is in complete compliance with the directives of this remand. If the report is deficient in any manner, the RO must implement corrective procedures at once.

3. Then, readjudicate the claim. If the benefit sought is not granted, the Veteran and his representative must be furnished a supplemental statement of the case and afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
M. Tenner
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).