Citation Nr: 1725235 
Decision Date: 06/30/17 Archive Date: 07/10/17

DOCKET NO. 09-20 720 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUES

1. Entitlement to an initial rating higher than 30 percent prior to September 6, 2010, and to a rating higher than 70 percent on and after September 6, 2010 for service-connected posttraumatic stress disorder (PTSD).

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

C. Smith, Associate Counsel


INTRODUCTION

The Veteran served honorably on active duty in the U.S. Army from May 1990 until April 1994. This matter comes to the Board of Veterans' Appeals (Board) on appeal from an October 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Seattle, Washington. A May 2009 rating decision of the RO in North Little Rock, Arkansas assigned an earlier effective date of April 22, 2002 for the grant of service connection for PTSD. Jurisdiction resides with the RO in North Little Rock, Arkansas.

In October 2010, the Veteran provided hearing testimony by live videoconference before the undersigned Veterans Law Judge (VLJ). A transcript of that proceeding is of record.

In a February 2017 rating decision, the RO increased the disability rating for PTSD from 30 percent to 70 percent effective September 6, 2010. As higher evaluations are available both prior to and following September 6, 2010, the issue of entitlement to a higher evaluation for PTSD for the entire period on appeal remains. See AB v. Brown, 6 Vet. App. 35, 38 (1998).

This case consists of documents in the Veterans Benefits Management System (VBMS) and in Virtual VA (VVA). The VVA file contains additional VA treatment records subsequent to 2010, and other documents that are duplicative of those in VBMS, or not relevant to the issues on appeal. 

The issue of entitlement to an initial rating higher than 30 percent prior to September 6, 2010, and to a rating higher than 70 percent on and after September 6, 2010, for service-connected PTSD is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ). 
FINDING OF FACT

The Veteran is unemployable as a result of service-connected PTSD and chronic fatigue syndrome. 

CONCLUSION OF LAW

The criteria for entitlement to a TDIU are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.15, 4.16 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

Upon receipt of a substantially complete application for benefits, VA must notify the claimant of what information or evidence is needed in order to substantiate the claim, and it must assist the claimant by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A (West 2014); 38 C.F.R. § 3.159(b) (2016); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). With regard to the Veteran's TDIU claim, in light of the Board's favorable decision, any deficiencies in VA's duties to notify and assist the Veteran with this issue decided herein are moot.

TDIU

The Veteran asserts he is unemployable due to service-connected PTSD and chronic fatigue syndrome. In this regard, a TDIU may be assigned when a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that: if the veteran has only one such disability, the disability must be rated at 60 percent or more, or, if the veteran has two or more disabilities, at least one disability is rated at 40 percent or more and additional disabilities bring the veteran's combined disability rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a) (2016). 
In this case, the Veteran meets the schedular criteria for TDIU. The only remaining issue is whether the Veteran is able to secure or follow a substantially gainful occupation as a result of his service-connected disabilities.

In a July 2002 VA psychosocial assessment, it was reported that the Veteran had 12 years of education and 18 months of technical training. His longest full-time job was 2 years, and his usual occupation was that of a roofer. He worked irregularly and part-time. 

A November 2003 letter from Dr. M.L. reported that the Veteran demonstrated significant memory and learning difficulties thought to be related to PTSD and MRI brain findings of cortical atrophy. As a result, Dr. M.L. wrote that his employment opportunities were significantly limited.

At the October 2010 hearing, the Veteran reported that he was unable to maintain employment as he was bothered by crowds and other people, and due to concentration and memory problems. He reported having problems with being properly oriented to date and his surroundings, and that he stayed in bed all day and had no energy. 

In an October 2013 letter from The Vet Center, the Veteran's therapist, V.H., wrote that the Veteran had been a client at the Little Rock Vet Center since August 2009. V.H. wrote that the Veteran's PTSD produced symptoms of sleep disturbances, irritability, and anger that affected his relationships with his family; that he had memory and concentration issues; and that his mood suffered due to fatigue and pain from a service-connected condition. V.H. wrote that the Veteran's service-connected disabilities prevented him from maintaining employment.

At a January 2014 VA PTSD examination, the examiner noted current diagnoses of PTSD and alcohol use disorder in remission. The examiner indicated that the Veteran's PTSD produced occupational and social impairment with deficiencies in most areas including work, judgment, thinking, and/or mood. His occupational impairment was noted in poor work longevity and being fired from several jobs in part due to his inability to get along with his supervisors and coworkers. Nevertheless, the examiner indicated that there was no evidence supporting unemployability due to PTSD at the time of the examination.

In a May 2014 addendum opinion, the VA PTSD examiner reported that the Veteran did not appear to be unemployable, as he had several jobs of short duration. The examiner then stated that "the evidence does not support employability" and that the Veteran's history demonstrated that he was able to work but that it would likely be for short periods with conflicts and spotty work attendance. The Board is unsure whether the contradictory findings are the result of a typographical error or other error.

At a June 2014 VA chronic fatigue syndrome examination, the examiner identified current symptoms of poor attention, inability to concentrate, forgetfulness, confusion, nearly constant debilitating fatigue, generalized muscle aches or weakness, fatigue lasting 24 hours or longer after exercise, headaches, migratory joint pains, neuropsychological symptoms, and sleep disturbance. The examiner reported the Veteran had no energy to do physical work anymore, but it was unclear whether the Veteran would be capable of sedentary employment.

In his June 2015 Application for Increased Compensation, the Veteran wrote that he became too disabled to work in 2009. A September 2015 completed request for employment information shows that his last part-time job ended in January 2011, and he has testified that he has not worked at all since that time. 

Based on the foregoing, the Board finds that entitlement to TDIU is warranted. The Veteran currently meets the schedular requirement for a TDIU and is unemployed. The Veteran's education and work history shows that he has typically done low-skilled manual labor and that he only has a high school education with some technical training. Although neither of the 2014 VA examiners concluded that the Veteran was unemployable, those examiners did not take into consideration the combined effects of the Veteran's PTSD and his chronic fatigue syndrome. Accordingly, the Board places the greatest weight on the 2013 opinion of the Veteran's treating therapist that the combined effects of the Veteran's PTSD and chronic fatigue syndrome render the Veteran unemployable. Additionally, the June 2014 examiner indicated the Veteran was only capable of sedentary employment. However, there is no indication that the Veteran has been employed in a sedentary position or otherwise possesses the requirements for such as position in light of his manual labor work history. Also, that examiner failed to explain how the Veteran would be capable of sedentary employment in light of the noted inability to concentrate, forgetfulness, confusion, and debilitating fatigue. Instead, the Board concludes that such symptoms support a finding that the Veteran is not capable of sedentary employment either. Accordingly, the Board finds the criteria for a TDIU have been met. 

ORDER

Entitlement to a TDIU is granted. 

REMAND

Although the Board regrets the delay, remand is required for the Veteran's remaining claim as the most recent supplemental statement of the case did not address newly received VA treatment records from 2010 onward, and a waiver of AOJ review in the first instance is not of record. Generally, the Board may not consider additional evidence not previously reviewed by the AOJ, unless a waiver of initial AOJ review is obtained from a veteran. Disabled American Veterans, et. al. v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003); 38 C.F.R. § 20.1304 (c) (2016). 

Also, remand is required for an addendum opinion that complies with the Board's prior remand directives. See Stegall v. West, 11 Vet. App. 268 (1998). The matter was last remanded by the Board in February 2011 in part to get a new VA examination to assess the current severity of the Veteran's PTSD. The examiner was asked to distinguish the symptoms of PTSD from any other diagnosed medical conditions, to include cortical atrophy. The Veteran was afforded the requested examination in January 2014 with an addendum opinion in May 2014. The VA examiner only noted diagnoses of PTSD and alcohol abuse, and then answered "not applicable" to the question of whether the symptoms could be differentiated. In another part of the examination report, the examiner said that they were unable to differentiate what portion of the noted occupational and social impairment was caused by each mental disorder because only one mental disorder was diagnosed. The examiner's opinion failed to address the other diagnoses of record, specifically cortical atrophy as requested by the Board, or otherwise explain why that diagnosis was not applicable. Accordingly, remand is required for an adequate addendum opinion in compliance with the Board's prior remand directives.

Lastly, efforts should be made to obtain all outstanding and relevant treatment records. VVA contains scattered records from 2010 through 2015 from the Central Arkansas Veterans Healthcare System, the Memphis VA Medical Center, and the Kansas City VA Medical Center, but none thereafter. There is a high likelihood the Veteran has received ongoing treatment for his mental health after 2015, and it unclear whether his records from 2010 through 2015 are complete. On remand, all VA treatment records from 2010 onward must be identified and associated with the claims folder. Also, in the February 2011 remand the Board directed the AOJ to make efforts to secure the necessary authorization from the Veteran to obtain outstanding and relevant treatment records from The Vet Center. VA requested the authorization in a June 2015 letter, to which the Veteran replied that he had no additional evidence to submit and he did not return the authorization form to allow VA to request those records on his behalf. As the matter is being remanded for further development, another attempt should be made to secure the necessary authorization from the Veteran and that it must be clearly explained to him that The Vet Center records have not yet been obtained and are not otherwise of record.

Accordingly, the case is REMANDED for the following action:

1. Contact the appropriate VA Medical Centers (to include the Central Arkansas Veterans Healthcare System, the Memphis VA Medical Center, and the Kansas City VA Medical Center) and obtain and associate with the claims file all outstanding records of treatment to ensure all outstanding records from 2010 onward have been obtained. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The nonexistence (unavailability) of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his representative. 

2. Contact the Veteran and afford him the opportunity to identify by name, address and dates of treatment or examination any relevant medical records, to include specifically records from The Vet Center from 2002 onward. He should be informed that VA does not yet have these records. Then, after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file. All information obtained must be made part of the file. All attempts to secure this evidence must be documented in the claims file. If, after making reasonable efforts to obtain named records, they are not able to be secured, provide the required notice and opportunity to respond to the Veteran and his representative.

3. After any additional records are associated with the claims file, schedule the Veteran for an appropriate VA examination to determine the current severity of his PTSD. The claims file should be made available to the examiner, who is asked to review the file, including in particular the January 2014 and May 2014 VA examination reports, and a copy of this remand. The purpose of this examination is to determine the severity of the Veteran's service-connected PTSD. In addition, the examiner should, to the extent possible, distinguish the symptoms attributable to the Veteran's service-connected PTSD from those of any other diagnosed medical conditions (to include cortical atrophy). However, if it is not medically possible to do so, the examiner should clearly so state.

4. Then, readjudicate the claim of entitlement to an initial rating higher than 30 percent prior to September 6, 2010 and higher than 70 percent on and after September 6, 2010 for service-connected PTSD on appeal. If any decision is adverse to the Veteran, issue a supplemental statement of the case that considers all VA treatment records from 2010 onward, allow appropriate time for response, and return the case to the Board.

No action is required of the Veteran until he is notified by VA. However, he is advised of his obligation to cooperate in ensuring that the duty to assist is satisfied. Kowalski v. Nicholson, 19 Vet. App. 171 (2005); Wood v. Derwinski, 1 Vet. App. 190 (1991). His failure to help procure treatment records, and his failure to report for a scheduled VA examination, may impact the determination made. 38 C.F.R. § 3.655 (2016). He is also advised that he has the right to submit additional evidence and argument, whether himself or through his representative, with respect to this matter. Kutscherousky v. West, 12 Vet. App. 369 (1999). It must be afforded prompt treatment. The law indeed requires that all remands by the Board or the United States Court of Appeals for Veterans Claims be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West 2014). 




______________________________________________
THERESA M. CATINO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs