Citation Nr: 1706061 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 09-44 752 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Buffalo, New York


THE ISSUES

1. Entitlement to service connection for a bilateral hip disability. 

2. Entitlement to service connection for polycystic ovarian syndrome (PCOS).


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

T. Sherrard, Counsel




INTRODUCTION

The Veteran, who is the appellant in this case, had active service from January 2002 to June 2002, and from December 2003 to March 2005. She also had Reserve service from July 2001 to July 2009. 

This matter comes before the Board of Veterans' Appeals (BVA or Board) from an August 2009 rating decision by the above Department of Veterans Affairs (VA) Regional Office (RO).

In April 2016, the Board remanded this case for further development. The development requested having been completed, the case is now appropriate for appellate review. 


FINDING OF FACT

The Veteran's bilateral hip disability and PCOS are not etiologically related to active service.


CONCLUSIONS OF LAW

1. The criteria for service connection for a bilateral hip disability have not been met. 38 U.S.C.A. §§ 101, 1101, 1110, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2016).

2. The criteria for service connection for polycystic ovarian syndrome have not been met. 38 U.S.C.A. §§ 101, 1101, 1110, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. 
§ 1110; 38 C.F.R. § 3.303(a). For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. 

The conditions at issue are not any of the "chronic diseases" listed under 38 C.F.R. § 3.309(a); therefore, 38 C.F.R. § 3.303(b) (requiring continuity of a condition after service if chronicity is not found in service) does not apply to this case. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). The United States Court of Appeals for Veterans Claims (Court) has held that "Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

Lay testimony is competent when it regards the readily observable features or symptoms of injury or illness and "may provide sufficient support for a claim of service connection." See Layno, 6 Vet. App. at 469; 38 C.F.R. § 3.159(a)(2). The Court has emphasized that when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. In such cases, the Board is within its province to weigh that testimony and to make a credibility determination as to whether that evidence supports a finding of service incurrence and continuity of symptomatology sufficient to establish service connection. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. Sept. 14, 2009). Lay statements may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). 

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of a veteran's claims file. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

A significant factor to be considered for any opinion is the accuracy of the factual predicate, regardless of whether the information supporting the opinion is obtained by review of medical records or lay reports of injury, symptoms and/or treatment. See Harris v. West, 203 F.3d 1347, 1350-51 (Fed. Cir. 2000) (examiner opinion based on accurate lay history deemed competent medical evidence in support of the claim); Kowalski v. Nicholson, 19 Vet. App. 171, 177 (2005) (holding that a medical opinion cannot be disregarded solely on the rationale that the medical opinion was based on history given by the veteran); Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that the Board may reject a medical opinion based on an inaccurate factual basis).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by a veteran or obtained on her behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

The Veteran contends that her current bilateral hip disability and PCOS are etiologically related to active service. With regard to the claimed hip disability, she states that in 2003, during active service, she fell on ice and injured her hip. With regard to her PCOS, she avers that symptoms of the disability, manifested by irregular periods, began during active service. However, the Board finds that the weight of the evidence is against a grant of service connection for a bilateral hip disability and PCOS. 

The Veteran's service treatment records are not associated with the claims file. However, as mentioned in the Board's April 2016 remand, the RO cited to specific service treatment records in its August 2009 rating decision and the October 2009 Statement of the Case (SOC). Specifically, the records apparently showed that the Veteran sought treatment for left hip trauma in January 2004, and that x-rays revealed no evidence of pelvic or left hip fracture, no evidence of dislocation, and that the left femoral head and acetabulum were intact. 

With regard to the claimed PCOS, the RO noted in its August 2009 rating decision that service treatment records were negative for complaints, treatment, and clinical diagnosis of the condition. 

Following separation from service in March 2005, post-service treatment records are negative for any report, symptoms, treatment, or diagnosis of a bilateral hip disability, with the exception of the September 2016 VA examination, at which the VA examiner diagnosed an occasional and periodic bilateral hip strain. The first mention of a hip problem was the Veteran's November 2008 claim for service connection.

With regard to the claimed PCOS, in October 2005, VA treatment records show that the Veteran reported that her last menstrual period was on September 21, 2004, and that it was intermittently irregular. 

In December 2007, during an evaluation for infertility, it was again noted that the Veteran had irregular menstrual cycles, and the clinician assessed possible PCOS. The diagnosis appears to have been confirmed in March 2008. 

After a review of all the evidence of record, lay and medical, the Board finds that the preponderance of the evidence demonstrates that the single episode of left hip pain during active service resolved prior to separation, that there was no event, injury, or disease manifesting in either a right hip disability or PCOS during active service, and that symptoms of a bilateral hip disability or PCOS were not continuous or recurrent in service. 

As noted above, service treatment records apparently documented a left hip trauma in January 2004. At the September 2016 VA examination, the Veteran stated that she reported to sick call following this trauma, was told that she had bruising, was treated, and that the symptoms resolved, demonstrating that her left hip trauma did not cause continuous or recurrent symptoms of a left hip disability during active service. Moreover, according to the information recorded by the RO in its August 2009 rating decision, the service treatment records were silent as to any right hip problems or symptoms of PCOS. 

The Board next finds that the preponderance of the evidence demonstrates that symptoms of the claimed disorders have not been continuous or recurrent since separation from active service in March 2005. 

The absence of post-service complaints, findings, diagnosis, or treatment for a bilateral hip disability and PCOS for more than three and two years, respectively, after service separation is one factor that tends to weigh against a finding of continuous or recurrent symptoms of the claimed disorders after service separation. See Buchanan, 451 F.3d 1336 (the lack of contemporaneous medical records is one fact the Board can consider and weigh against the other evidence, although the lack of such medical records does not, in and of itself, render the lay evidence not credible). 

In addition, at the September 2016 VA examination, the Veteran stated that she had only occasional pain in both hips, once every three or four months, depending on the physical requirements of her job at a nursing home. She rated the hip pain at a level of five or six out of ten in severity, stated that it lasted for about 30 to 40 minutes, that it was relieved by taking a break, and that she did not know why her representative had put in a claim for a bilateral hip disability. Her statements provide highly probative evidence against a finding that she has had continuous or recurrent bilateral hip disability symptoms since service separation. 

With regard to the PCOS, the September 2016 VA examiner noted that the Veteran reported intermittently irregular periods in October 2005, and that her last period was in September 2004, prior to her service separation. However, the examiner further noted that she did not have any other gynecological symptoms or symptoms of PCOS in October 2005. Thus, the VA examiner concluded that PCOS first manifested in 2007, when she was found to have other symptoms of the disorder, including irregular periods, hirsutism, obesity, and acne. 

The VA examiner's opinion provides highly probative evidence that symptoms of PCOS have not been continuous or recurrent since service separation. While the Veteran is competent to report symptoms she can observe as a layperson, such as irregular menstrual cycles, she is not shown to be competent to render medical opinions on questions of diagnosis or etiology (e.g., whether the irregular menstrual cycles were manifestations of PCOS). See Jandreau, 492 F.3d 1372; see also Barr, 21 Vet. App. 303 (lay testimony is competent to establish the presence of observable symptomatology). Therefore, the September 2016 VA examiner's opinion on this matter has been given more weight in determining that symptoms of PCOS did not manifest during service, nor have they been continuous or recurrent since service separation. 

To the extent that the Veteran's recent assertions made in the context of the current disability claim can be interpreted as a claim of continuous or recurrent bilateral hip disability or PCOS symptoms since service, the Board finds that, while the Veteran is competent to report the onset of symptoms of the claimed disorders, these more recent assertions are outweighed by the other, more contemporaneous, lay and medical evidence of record, both in service and after service, and are not reliable. See Charles v. Principi, 16 Vet. App. 370 (2002). The Board finds that the Veteran's assertions of continuous or recurrent symptoms of a bilateral hip disability after service are not accurate because they are outweighed by other evidence of record that includes the more contemporaneous service treatment records, which, as described by the RO, demonstrated that left hip pain resolved prior to separation, and were negative for any signs, symptoms, complaints, treatment, or diagnoses of right hip problems, or the lack of any documentation of reports or treatment for bilateral hip problems until 2008, three years after service separation; and the Veteran's own statements regarding the intermittent nature of her bilateral hip pain and its association with her post-service occupation, as described above. In regard to the PCOS, while the Veteran reported intermittently irregular menstrual cycle, no other symptoms characteristic of PCOS were noted until 2007, two years after service separation; and it was the 2016 VA examiner's opinion that symptoms of PCOS did not manifest until 2007, two years after service separation.

As such, the Board does not find that the evidence sufficiently supports continuous or recurrent symptomatology of the claimed disorders since service, so as to warrant a grant of service connection. 

The Board acknowledges the Veteran's belief that her current bilateral hip disability and PCOS are related to active service. However, her statements alone do not establish a medical nexus. Indeed, as noted above, while the Veteran is competent to provide evidence regarding matters that can be perceived by the senses, she is not shown to be competent to render medical opinions on questions of etiology. See Jandreau; see also Barr (lay testimony is competent to establish the presence of observable symptomatology). As such, as a lay person, she is without the appropriate medical training and expertise to offer an opinion on a medical matter, including the diagnosis, etiology, or causation of a specific disability. The question of diagnosis and causation, in this case, involves complex medical issues that the Veteran is not competent to address. Jandreau.

Moreover, the Board finds that no medical opinions are of record which support a relationship between the Veteran's current bilateral hip disability or PCOS and active service, nor is there any other indication in the medical evidence of record that there is a relationship between the current bilateral hip disability or PCOS and active service. 

The medical evidence of record is unanimous in demonstrating that the current bilateral hip disability is not related to active service, but, rather, to the Veteran's occupation and post-service weight gain, and that her PCOS did not manifest until 2007.

As noted above, the Veteran was afforded a VA examination in September 2016. The VA examiner opined that the Veteran's bilateral hip pain is not related to active service, reasoning that there is no evidence of complaints of hip pain following active service, and that the Veteran had put on a lot of weight since service separation, which is likely contributing to her hip pain. The examiner cited to specific medical literature in support of his opinion, and further noted that examination of the hips was normal at the time. 

With regard to the PCOS, the September 2016 examiner also opined that it is not related to active service, reasoning, as explained above, that it first manifested in 2007, two years after service separation. 

In sum, the weight of the competent evidence demonstrates that there is no relationship between the Veteran's bilateral hip disability or PCOS and active service. There are no contrary opinions of record.

Based on the evidence of record, the weight of the evidence demonstrates no relationship between the Veteran's current bilateral hip disability or PCOS and her military service, including no credible evidence of continuous or recurrent symptoms of the claimed disorders during active service, continuous or recurrent symptomatology of the claimed disorders following service separation, or competent medical evidence establishing a link between either the bilateral hip disability or PCOS and active service. Therefore, the Board finds that a preponderance of the lay and medical evidence that is of record weighs against the claims for service connection for a bilateral hip disability and PCOS, and outweighs the Veteran's more recent contentions regarding in-service continuous or recurrent symptoms and continuous or recurrent post-service symptoms. 

For these reasons, the claim must be denied. The Board notes that, in circumstances such as this, where the original service treatment records are unavailable, the Board should consider carefully the benefit of the doubt rule. See O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). However, because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). VA's duty to notify was satisfied by way of a November 2008 letter. 

The Board is also satisfied VA has made reasonable efforts to obtain relevant records and evidence. Specifically, the information and evidence that has been associated with the claims file includes the Veteran's service personnel records, post-service VA and private treatment records, a VA examination report and opinion, and the Veteran's statements. The Board notes that, subsequent to its April 2016 remand, additional efforts were made to obtain the original service treatment records but were unsuccessful, as outlined in a May 2016 memorandum from the Records Management Center (RMC). The Board finds that further attempts to locate the service treatment records would be futile. 

A VA examination and opinion were obtained in September 2016, as discussed above. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the September 2016 VA examination and opinion obtained in this case are adequate. The opinions were predicated on a full reading of the private and VA medical records in the Veteran's claims file, as well as an in-person examination and interview of the Veteran. The VA nexus opinions considered all of the pertinent evidence of record, to include VA treatment records, comprehensive physical examinations, and the statements of the Veteran, and provide a complete rationale for the opinions stated, relying on and citing to the records reviewed, as well as to medical literature where applicable. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the claims decided herein has been met, and that they substantially comply with the Board's April 2016 remand directives. 38 C.F.R. § 3.159(c)(4).

Notably, the Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).


ORDER

Service connection for a bilateral hip disability is denied. 

Service connection for polycystic ovarian syndrome is denied.



____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs