Citation Nr: 1714090 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 10-20 558 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUE

Entitlement to a compensable initial evaluation for the service-connected residual disability of an in-service right orchiectomy. 


REPRESENTATION

Veteran represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran and His Friend


ATTORNEY FOR THE BOARD

Avery M. Schonland, Associate Counsel

INTRODUCTION

The Veteran had active service from February 1975 to June 1976. This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2009 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska. 

In September 2010, the Veteran testified at a videoconference hearing. The Veterans Law Judge who presided over that hearing has since left the Board. Therefore, the Board offered the Veteran the opportunity for another hearing before a Veterans Law Judge who would issue the decision with respect to his appeal, but he declined that opportunity in a July 2015 statement. A transcript of the September 2010 hearing is of record. 

This case was previously before the Board in July 2013, September 2015, and September 2016. In the September 2016 decision, the Board denied service connection for right lower extremity peripheral neuropathy, and remanded the issue of entitlement to a compensable initial evaluation for service-connected residual disability of an in-service right orchiectomy. Thus, this issue remains on appeal as listed above. The case has since been returned to the Board for appellate review. 

This case consists entirely of documents in the Veterans Benefits Management System (VBMS). The Board has reviewed all relevant documents in VBMS. Any future consideration of this Veteran's case should take into consideration the existence of this electronic record. The documents in the Veteran's Virtual VA claims file, including the VA examination report, are duplicative of the documents in VBMS. 


FINDINGS OF FACT

1. Throughout the appellate period, the Veteran's service-connected residual disability from an in-service right orchiectomy has manifested as an absent right testicle, but has not has manifested as an absent left testicle. 
2. Throughout the appellate period, the Veteran's service-connected residual disability from an in-service right orchiectomy has also manifested as moderate to occasionally severe right sided groin pain. 

3. The criteria for rating testis removal do not adequately contemplate the Veteran's disability picture.


CONCLUSIONS OF LAW

1. The criteria for a compensable initial evaluation for service-connected residual disability from an in-service right orchiectomy have not been met on a schedular basis. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1-4.14; 4.115b, Diagnostic Code 7524 (2016). 

2. The criteria for an initial evaluation of 10 percent for symptoms of right sided groin pain associated with the in-service right orchiectomy have been met on an extra-schedular basis. 38 C.F.R. § 1155 (West 2014); 38 C.F.R. § 3.321(b) (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the United States Department of Veterans Affairs (VA) has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.326(a). The VCAA provides that the VA will notify the claimant of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

In Dingess v. Nicholson, 19 Vet. App. 473 (2006), the U.S. Court of Appeals for Veterans Claims (Court) held that notice under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) includes notice that a disability rating and an effective date for the award of benefits will be assigned if the claim is granted. The Board also notes that the Court has held that the plain language of 38 U.S.C.A. § 5103(a) requires that notice to a claimant pursuant to the VCAA be provided "at the time" that, or "immediately after," VA receives a complete or substantially complete application for VA benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004). 

The VA satisfied its duty to notify the Veteran. The record reflects that following the Veteran's August 2009 service-connection claim for an undescended testicle, and prior to the adjudication of that claim in December 2009, the RO mailed the Veteran a letter in August 2009 fully addressing all notice elements. Furthermore, as this is an appeal arising from the initial grant of service connection, the August 2009 notice was legally sufficient and VA's duty to notify the Veteran in this case has been satisfied. See Hartman v. Nicholson, 483 F.3d 1311 (2006); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

The VA's duty to assist includes assisting the claimant in the procurement of service and other relevant records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The VA satisfied its duty to assist the Veteran in the development of his claim. The RO associated the Veteran's service treatment records with the electronic claims file. The Board is cognizant that his entrance examination is missing from the available service-treatment records. However, this is a claim for increased initial evaluation; and therefore the most relevant evidence is that which addresses the current level of severity of his right orchiectomy. Francisco v. Brown, 7 Vet. App. 55 (1994). Again, the Veteran served from February 1975 to June 1976, and therefore the unavailable entrance examination entirely pre-dates the appellate period beginning with the Veteran's August 2009 service-connection claim. Moore v. Nicholson, 21 Vet. App. 211, 215 (2007), rev'd on other grounds, Moore v. Shinseki, 555 F.3d 1369 (2009). 

The RO has also associated the Veteran's Omaha VA Medical Center (VAMC) treatment records and Social Security Administration records with the electronic claims file. In August 2009, the Veteran submitted private treatment records from Charles Drew Health Center, but specified at his September 2010 hearing that they are not relevant to the issue on appeal. He further specified at that hearing that he receives his treatment at the Omaha VAMC. As he has not identified any further private treatment, the Board finds that there are no additional private treatment records to assist the Veteran in obtaining. Thus, the Board concludes that VA has made every reasonable effort to obtain all records relevant to the Veteran's claim. 

In November 2009, July 2013, and October 2015, the VA provided the Veteran with examinations. The examinations and opinions are adequate. An examination is adequate where it is based upon consideration of the Veteran's prior medical history and describes the disability in sufficient detail. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). The opinion and conclusion of an examination are adequate when the examiner supports the conclusion with an analysis that the Board can consider and weigh against contrary opinions. Id. at 124. 

Here, each examiner considered the relevant history of the Veteran's in-service right orchiectomy, addressed his symptoms, and performed a physical examination. The November 2009 examiner provided an opinion that the RO relied upon in granting service connection in the December 2009 rating decision on appeal. The July 2013 examiner provided findings that can be applied to the Schedule for Rating Disabilities. Thus, those examinations are adequate. 

With regard to the October 2015 VA examination, that examiner indicated that the Veteran would allow the examiner to visualize, but not palpate, the area in question. The Board notes that a claimant's cooperation is essential to the development of any claim. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991) (noting that "[t]he duty to assist is not always a one-way street"). Absent a showing of good cause, a Veteran's refusal to participate or cooperate during a VA examination is akin to a failure to report for a VA examination. See 38 C.F.R. § 3.655 (2014); VAOPGCPREC 4-91 (Feb. 13, 1991). Although a claimant is of course "free to refuse to report for a scheduled VA examination [,] . . . the consequences of that refusal may result in the adjudication of the matter based on the evidence of record." Kowalski v. Nicholson, 19 Vet. App. 171, 178 (2005) (citing 38 C.F.R. § 3.655 (a)). In other words, Veterans who fail to cooperate during VA examinations "subject them [selves] to the risk of an adverse adjudication based on an incomplete and underdeveloped record." Kowalski, 19 Vet. App. at 181. 

While the October 2015 VA examination yielded little information other than the examiner's assessment that the Veteran suffers moderate to occasionally severe pain in the right groin, the November 2009 and July 2013 VA examinations do address the Schedule for Rating Disabilities and are adequate. Therefore, the Board will address those examinations reports in the discussion of the Veteran's schedular evaluation below. Moreover, the Board will use the October 2015 examiner's assessment to the extent possible in the extra-schedular discussion below. Without cooperation from the Veteran, and an examination report based on a cooperative examination, there is nothing more than the VA can do to assist the Veteran in this case. 

As previously noted, the appellant was afforded an opportunity to present testimony at a hearing before the Board in September 2010. In Bryant v. Shinseki, 23 Vet. App. 488, 496-97 (2010), the Court held that the Veterans Law Judge who chairs a hearing fulfill two duties to comply with 38 C.F.R. § 3.103(c)(2). These duties consist of (1) fully explaining the issues pertinent to the claim(s) on appeal; and (2) suggesting the submission of evidence that may have been overlooked. See also 38 C.F.R. § 3.103(c)(2). In this case, the presiding Veterans Law Judge set forth the issues to be discussed and sought to identify pertinent evidence not currently associated with the claims folder, to include any relevant post-service treatment records. Specifically, the Veteran was asked about his private treatment through the Charles Drew Health Center, and testified that it was not relevant to the issue on appeal. He also reported receiving his current treatment at the Omaha VAMC. The hearing focused on the elements necessary to substantiate the claims, and the appellant, through his testimony and questioning by his representative, demonstrated his actual knowledge of the elements necessary to substantiate his claims. The Veteran discussed right sided groin pain and tenderness as well as his difficulty walking, climbing steps, using a ladder, and sitting for too long. As such, the Board finds that VA complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and Bryant v. Shinseki, 23 Vet. App. 488, 492 (2010). 

The Board also finds that the Agency of Original Jurisdiction (AOJ) has complied with the Board's July 2013, September 2015, and September 2016 remand directives. In July 2013, the AOJ obtained the Veteran's Social Security Administration (SSA) records, and afforded him with the July 2013 VA examination. As discussed above, that examination was adequate. In September 2015, the AOJ obtained the outstanding Omaha VAMC treatment records, and in October 2015 afforded him with a further VA examination. As discussed above, the adequacy of that examination was affected by the Veteran's failure to cooperate with the examiner, rather than any failure on the part of the AOJ. Therefore, the Board finds that the AOJ substantially complied with the September 2015 remand concerning the provision of a VA examination. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (finding that only substantial compliance, rather than strict compliance is required). The AOJ again updated the Omaha VAMC treatment records in September 2016. Finally, in September 2016 the AOJ referred this case to the Director of Compensation Service, who gave her advisory opinion in October 2016. Accordingly, the Board finds that the AOJ has complied with the July 2013, September 2015, and September 2016 remand directives and will proceed with adjudication. Stegall v. West, 11 Vet. App. 268 (1998). 

Neither the Veteran nor his representative has identified any relevant, outstanding records that are pertinent to the claims being decided herein that have not already been requested or obtained. The record also does not otherwise indicate the existence of any additional existing evidence that is necessary for a fair adjudication of the claim. Hence, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Schedular Evaluation

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The Schedule for Rating Disabilities is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. 38 C.F.R. § 4.7. 

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). While the regulations require review of the recorded history of a disability by the adjudicator to ensure a more accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings.

Where the question for consideration is the propriety of the initial rating assigned, evaluation of the evidence since the effective date of the grant of service connection is required. Fenderson v. West, 12 Vet. App. 119, 125-26 (1999). Where VA's adjudication of the claim for increase is lengthy and factual findings show distinct time periods where the service-connected disability exhibits symptoms which would warrant different ratings, different or "staged" ratings may be assigned for such different periods of time. Fenderson, 12 Vet. App. at 126-27.

The Veteran is specifically rated under Diagnostic Code 7524, which provides for a noncompensable disability rating for removal of one testis and a 30 percent disability rating for removal of both testes. An accompanying note indicates that in cases of the removal of one testis as the result of a service-incurred injury or disease, other than an undescended or congenitally undeveloped testis, with the absence or nonfunctioning of the other testis unrelated to service, an evaluation of 30 percent will be assigned for the service-connected testicular loss. 

Notably, in this case, the service treatment records reflect that the Veteran underwent an in-service right orchiectomy to treat an undescended testicle. He has never disputed this fact, and testified at his September 2010 videoconference hearing that this condition runs in his family. At that hearing, he also specified that his service-connected condition does not affect the left side. The November 2009 and July 2013 VA examiners each noted the Veteran's right testicle to be absent and his left testicle to be normal. Therefore, there is no possible compensable evaluation under Diagnostic Code 7524. 

Although the residual disability from the Veteran's in-service right orchiectomy does not warrant a compensable evaluation under the currently assigned Diagnostic Code, 7524, the Board must consider the assignment of an increased evaluation under other potentially applicable Diagnostic Codes. See Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

Diseases of the genitourinary system generally result in disabilities related to renal or voiding dysfunctions, infections, or a combination of these. 38 C.F.R. § 4.115a. Under the Genitourinary Diagnostic Codes, 38 C.F.R. § 4.115b, Diagnostic Code 7522 provides for a 20 percent disability rating for deformity of the penis with loss of erectile power. Diagnostic Code 7523 provides for a noncompensable disability rating for complete atrophy of one testis, and a 20 percent disability rating for complete atrophy of both testes. 

The Board finds that the evidence does not show that the criteria for a compensable disability rating have been met under either of these Diagnostic Codes. The November 2009 examiner noted no urinary symptoms, including no leakage and no urinary tract infections. The July 2013 examiner similarly noted no voiding dysfunction and no urinary tract infections. The November 2009 VA examiner found no erectile dysfunction. While the July 2013 VA examiner did note erectile dysfunction, he also noted the Veteran's penis to be normal. Without deformity of the penis, this erectile dysfunction would not merit a compensable evaluation under Diagnostic Code 7522. The Board further notes that the Veteran specifically filed a claim for special monthly compensation for the loss of use of a creative organ, and the RO denied that claim in an April 2010 rating decision. The Veteran did not appeal, therefore that issue is not before the Board. Finally, there is no evidence of atrophy of the left testicle. As listed above the November 2009 and July 2013 examiners each noted the right testicle to be missing and the left testicle to be normal. Therefore, there is no possible compensable evaluation under Diagnostic Code 7523. 
The Veteran has other disorders, such as right lower extremity peripheral neuropathy and a surgical scar. However, there is no medical evidence showing that the peripheral neuropathy is a residual disability of his in-service right orchiectomy. In fact, the Veteran filed a service-connection claim for this disorder in December 2009, and the Board denied service connection in September 2016. The Board highlighted a January 2010 VA examiner's findings that the symptoms in the Veteran's right leg are not in the inguinal area and that diagnostic studies suggest that the etiology of the neuropathy is related to his spinal stenosis and hepatitis C. The SSA records similarly attribute the Veteran's peripheral neuropathy to his medical history of hepatitis. With regard to the Veteran's surgical scar, the RO has already assigned a separate compensable evaluation for the surgical scar in a February 2010 rating decision. The Veteran did not appeal the initial evaluation assigned to that scar in his March 2010 notice of disagreement for peripheral neuropathy. Therefore, the Board lacks jurisdiction to address that scar. Moreover, considering the Veteran's scar in the evaluation of his service-connected right orchiectomy would violate the rule against pyramiding by evaluating the same disability under both Diagnostic Code 7804 for a scar and Diagnostic Code 7524 for a right orchiectomy. See 38 C.F.R. § 4.14

Each VA examiner, including the October 2015 VA examiner, noted the Veteran's pain and tenderness to palpation in the right groin. However, a compensable evaluation is not provided in the schedule for groin pain. Unless the service-connected condition interferes with genitourinary system functioning, a compensable disability rating is not warranted. 

Therefore, according to the evidence, the level of the Veteran's disability solely from the service-connected right orchiectomy does not meet the criteria for a compensable rating. In the particular circumstances of this case, the current noncompensable evaluation is appropriate for any symptomatology the Veteran has that is attributable to his service-connected orchiectomy. 

There is no reasonable doubt that could be resolved in his favor as the medical evidence is unequivocal with regard to a schedular evaluation. There are no other Diagnostic Codes potentially applicable to the service-connected condition.
Extra-Schedular Evaluation

The Board must consider the provisions of 38 C.F.R. § 3.321(b)(1), regardless of whether the Veteran has raised this argument. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). In this case, the Board finds that the record shows that the Veteran's service-connected right orchiectomy is so exceptional or unusual as to warrant the assignment of a compensable rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1). 

The threshold factor for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service- connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extra-schedular referral is required. Id.; see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extra-schedular regulation (38 C.F.R. § 3.321(b)(1)) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization). 

The evidence in this case shows such an exceptional disability picture that the available schedular evaluation for the service-connected disability is inadequate. A comparison between the level of severity and symptomatology of the Veteran's assigned rating with the established criteria found in the Schedule for Rating Disabilities shows that the rating criteria does not reasonably describe the Veteran's disability level and symptomatology. The Veteran has consistently reported right groin pain to the November 2009 VA examiner, at his September 2010 videoconference hearing, to the July 2013 VA examiner, and to the October 2015 VA examiner. However, as discussed above, that groin pain is not contemplated under any of the relevant Diagnostic Codes for the diseases of the genitourinary system. Rather, diseases of the genitourinary system generally result in disabilities related to renal or voiding dysfunctions, infections, or a combination of these. 38 C.F.R. § 4.115a. 

Further, the Board finds that the Veteran's service-connected residual disability from an in-service right orchiectomy exhibits other related factors, in the scope of those provided by regulations as "governing norms." Specifically, his September 2010 testimony indicates that his right orchiectomy was a source of not only pain, but difficulty in walking, sleeping, climbing steps, using a ladder, and sitting for too long. As, the first two Thun steps have been met, the Board's remaining task is to conduct, de novo, the third and final step of the Thun analysis; that is, "a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular [evaluation]." See Thun, 22 Vet. App. at 116.

In September 2016, the Board remanded this case for referral to the Director of Compensation Service. In an administrative decision received in October 2016, the Director denied an extra-schedular rating for the Veteran's service-connected residual disability from an in-service right orchiectomy. In pertinent part, the Director noted that a review of all available evidence, including VA examinations, reveals that the Veteran's service-connected residual disability from an in-service right orchiectomy has not caused him to be unemployable. The Board notes that the Director of Compensation Service's October 2016 Advisory Opinion relied heavily on the fact that the July 2013 VA examiner found no evidence of physical or sedentary employment preclusion as a result of the orchiectomy. Yet, the July 2013 examination never actually states this, and in fact recorded the Veteran's report that he had stopped working in 2011. The Director of Compensation Service's October 2016 Advisory Opinion also failed to address the Veteran's testimony regarding his difficulty walking, climbing steps, using a ladder, and sitting for too long. 

The Director of Compensation Service's decision is not evidence, but, rather, the de facto AOJ decision, and the Board must conduct de novo review of this decision. Wages v. McDonald, 27 Vet. App. 233, 238-39 (2015) (holding that the Board conducts de novo review of the Director of Compensation Service's decision denying extra-schedular consideration). The Court reaffirmed that the Board has jurisdiction to review the entirety of the Director's decision denying or granting an extra-schedular rating and elaborated that the Board is authorized to assign an extra-schedular rating when appropriate. Kuppamala v. McDonald, 27 Vet. App. 447 (2015). 

After a review of the evidence, and resolving all doubt in favor of the Veteran, the Board finds that throughout the appellate period, a 10 percent extra-schedular evaluation is warranted for right sided groin pain with difficulty walking, climbing steps, using a ladder, and sitting for too long. 

In determining the precise extra-schedular disability rating, the Board considered that the percentage ratings in the Schedule for Rating Disabilities represent, as far as can practicably be determined, the average impairment in earning capacity resulting from such diseases and their residual conditions in civil occupations. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2016). Section 4.1 also states that the rating schedule generally provides the degrees of disability adequate to compensate for considerable loss of working time from exacerbations or illness proportionate to the severity of the several grades of disability. 

Accordingly, as it pertains to the Veteran's extra-schedular rating for service-connected residual disability from an in-service right orchiectomy, the Schedule for Rating Disabilities provides a general point of reference for assigning such an extra-schedular rating. In other words, Diagnostic Code 7524 allows for a maximum 30 percent schedular evaluation for testicle removal, and this code has been appropriately used in rating the Veteran's service-connected disability. Therefore, it follows that, because the regulations and Schedule for Rating Disabilities provide for loss of working time proportionate to the severity of a particular disability, an extra-schedular rating would not provide a rating higher than what is already provided by the regulations and Schedule for Rating Disabilities for that disability. Thus, in this case, a 30 percent rating should be the maximum rating for the Veteran's service-connected residual disability from an in-service right orchiectomy, even on an extra-schedular basis. 
Other relevant Diagnostic Codes affecting the groin include Diagnostic Code 7522 and Diagnostic Code 7523. However, as discussed above, these Diagnostic Codes are inappropriate. Further, these Diagnostic Codes similarly fail to address the Veteran's symptoms of right sided groin pain with difficulty walking, climbing steps, using a ladder, and sitting for too long. As diseases of the genitourinary system generally result in disabilities related to renal or voiding dysfunctions, infections, or a combination of these, the Diagnostic Codes pertaining to the genitourinary system generally address those symptoms. 38 C.F.R. §§ 4.115a, 4.115b. 

Therefore, the Board must also consider the guidance of Diagnostic Codes that affect the groin, but come from body systems other than the genitourinary system. The highest rating available for disability of the ilioinguinal nerve, impairment of which can result in groin pain, is 10 percent for severe to complete paralysis of that nerve. 38 C.F.R. § 4.124a, Code 8530. 

The Board concludes that the Veteran's symptoms of right sided groin pain and tenderness with difficulty walking, climbing steps, using a ladder, and sitting for too long are most analogous to the 10 percent rating contemplated under Diagnostic Code 8530. Indeed, the October 2015 VA examiner objectively noted moderate to occasionally severe pain in the right groin area. The November 2009 examiner had similarly noted tenderness to palpation. As the Veteran has occasionally severe right groin pain, but his left testicle is still present and he has no deformity of the penis, the Board finds that the 10 percent rating described by Diagnostic Code 8530 most closely approximates his level of disability. While the Veteran's right sided groin pain is not constantly severe, the Board resolves all reasonable doubt in his favor and awards a compensable initial evaluation for the service-connected residual disability from an in-service right orchiectomy on an extra-schedular basis. 

Lastly, the Board notes that the Veteran has not filed a claim for a total disability evaluation based on individual unemployability (TDIU). While he did report to the July 2013 VA examiner that he had stopped working in 2011 due to right sided groin pain, he had previously reported to the November 2009 VA examiner that he stopped working to seek treatment for alcohol abuse. Given the inconsistencies in these statements, the Board looks to the other evidence of record. In this regard, the SSA records indicate that the Veteran does not work due to disability. Yet the SSA records also list the disabilities that prevent him from working as peripheral neuropathy with a history of hepatitis C, chronic obstructive pulmonary disease, dermatitis, and lumbar stenosis. As none of these disabilities is service-connected, the Board finds that TDIU has not been reasonably raised by the Veteran, his representative, or the record. See Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). 


ORDER

The criteria for a compensable initial evaluation for service-connected residual disability from an in-service right orchiectomy have not been met on a schedular basis. 

An initial evaluation of 10 percent, but no higher, for right sided groin pain associated with the in-service right orchiectomy is granted on an extra-schedular basis throughout the appellate period, subject to the criteria governing the payment of monetary benefits. 




______________________________________________
A. S. CARACCIOLO
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs